UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK AND CHRISTIE A. ADAMS, ind. & as H/W,<br><br>           Plaintiffs,<br><br>           v.<br><br>WELLS FARGO BANK, N.A.;<br><br>           and<br>PHELAN, HALLINAN, DIAMOND, & JONES LLP f/k/a<br>PHELAN, HALLINAN & SCHMIEG, LLP,<br><br>           Defendants. | No.<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CIVIL ACTION COMPLAINT

**I.    Jurisdiction and Venue**

1.    Jurisdiction in this Honorable Court is based on a violation of federal law conferred by 28 U.S.C. §1331 and diversity conferred by §1332; supplemental jurisdiction over state law claims is granted by 28 U.S.C. §1367.

2.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) in that the events giving rise to Plaintiff's claims occurred in this District.

**II.    Parties**

3.    Plaintiffs, Frank and Christie A. Adams, are adult and married residing individually and respectively at the above-captioned addresses, 58 Lilian Lane, Bangor PA 29715, and

4.    Defendant WELLS FARGO BANK N.A. is the owner and/or servicer of a mortgage on the property, and is a corporation with a principal place of business located at 3476

Stateview Boulevard, Fort Mill SC 29715. At all times herein, defendant acted through its agents.

5. Defendant PHELAN, HALLINAN, DIAMOND, & JONES LLP f/k/a PHELAN, HALLINAN & SCHMIEG, LLP ("Law Firm"), is a corporation and law firm engaged solely in the business of debt collection in the Commonwealth of Pennsylvania with principal offices at 1617 JFK Boulevard, Suite 1400, Philadelphia, PA 19103. Law Firm regularly attempts to collect debts alleged to be due another and is a debt collector as defined by 15 U.S.C. §1692a(6).

## IV. Factual Allegations

6. Prior to the events hereinafter described, plaintiffs fell into arrears on their mortgage loan after missing regular monthly payments in April, June, and July, 2009[1].

7. Prior to the events hereinafter described, the principal balance of plaintiffs' loan was approximately $66,000.00.

8. On or about August 2009, plaintiffs entered into a twelve (12) month repayment plan/Special Forbearance plan with defendant Wells Fargo.

9. On or about November 2009, plaintiff Christie Adams experienced a miscarriage of her pregnancy.

10. Between August 2009 and September 2010 plaintiffs completed the Special Forbearance Plan and otherwise paid over $19,000 to defendant Wells Fargo (see Wells Fargo loan history attached as Exh. 1).

11. On or about October 2010, plaintiff resumed regular monthly mortgage payments to Wells Fargo of $978.25 through December 2010.

12. On or about December 19, 2010, Defendant Wells Fargo sent plaintiffs an Act 91

---

[1] Wells Fargo's payment history alleges plaintiffs were in arrears an additional monthly payment behind prior to said dates.

2

foreclosure notice describing a default of four (4) regular monthly payments of $978.25 for September through December, 2010 (Exh. 2).

13. At the time of aforesaid letter notice of default to plaintiffs by Defendants, plaintiffs were not in arrears on their mortgage loan.

14. On or about November 2010, a Wells Fargo managerial employee, Jane Doe, whose offered name was "Deb" and whose code contact is "2GQ", from Wells Fargo's Virginia servicing center with a contact phone number was 240.586.6647, telephoned plaintiff.

15. Jane Doe informed plaintiff Mrs. Adams that she was helping clean up various accounts at the Wells Fargo servicing location that serviced plaintiffs' loan and, regarding plaintiffs' loan, had been surprised by the poor quality of Wells Fargo's servicing of plaintiffs' account.

16. Jane Doe also informed plaintiff that she had processed a request with the Wells Fargo's Global Management department and the Executive Office of the President for correction of funds misapplication in plaintiffs' loan account.

17. Jane Doe further informed plaintiff that said request would take between 1-10 days to process and that Wells Fargo employee Tanner Lloyd at contact phone 800.853.8516, ext. 45942, was supposed to be the guy to fix all misapplied payments.

18. Approximately two (2) weeks after the aforesaid contact, plaintiff telephoned Jane Doe for a status and was informed by Jane Doe that she could no longer have any contact with plaintiffs and advised Mrs. Adams to retain a lawyer regarding the mishandling of plaintiffs' loan account by Wells Fargo.

19. On or about January 24, 2011, Wells Fargo returned plaintiffs' regular monthly mortgage payment along with a letter notice that plaintiffs' mortgage account was in default and

had therefore been referred to its foreclosure counsel, Defendant Law Firm, to commence foreclosure proceedings against plaintiffs (Exh. 3).

20. At the time of aforesaid letter notice of default to plaintiffs by Defendants, plaintiffs were not in arrears on their mortgage loan and therefore the Act 91/6 notice was inaccurate.

21. On or about February 11, 2011, Defendant Wells Fargo sent plaintiffs an Act 91 foreclosure notice describing a default of six (6) regular monthly payments of $978.25 for September 2010 through February 2011 (Exh. 4).

22. At the time of aforesaid letter notice of default to plaintiffs by Defendants, plaintiffs were not in arrears on their mortgage loan other than for those months in which Wells Fargo refused their payments and artificially created a default. Therefore the Act 91/6 notice was inaccurate.

23. On or about October 25, 2011, Defendants sued plaintiff in foreclosure in the Northampton Court of Common Pleas, Docket No. C-48CV2011-10197 (the "underlying litigation").

24. During the foreclosure, defendant Law Firm filed a motion with the Court misrepresenting the payment history for the loan in contradiction to its own payment history exhibits as follows:

    a. That Plaintiffs made their October 2009 payment in December 2009 when Wells Fargo's own loan history shows it was made in November 2009 (see again Exh. 1);

    b. That Plaintiffs made their November 2009 payment in January 2010 when Wells Fargo's own loan history shows it was made in December 2009 (see again Exh.

       1);

       c. That Plaintiffs made their December 2009 payment in June, 2010 when Wells Fargo's own loan history shows it was made in February 2010.

(see again Exh. 1)

25. The underlying litigation was terminated in Plaintiffs' favor by way of the entry of an order granting a verdict in favor of Plaintiffs.

## COUNT I
### Wrongful Use of Civil Proceedings, 42 Pa.C.S.A. §§ 8351, et seq.
### Dragonetti (Plaintiffs v. All defendants)

26. Plaintiffs incorporate by reference all prior paragraphs as if fully set forth at length herein.

27. As set forth above, Defendants caused the underlying litigation to be instituted against Plaintiffs.

28. At all times relevant hereto the Defendants commenced, continued and/or prosecuted underlying litigation was commenced and continued by Defendants and against the Plaintiffs without probable cause.

29. The underlying litigation was commenced and continued by Defendants and against Plaintiffs with malice and/or reckless indifference to the rights and interest of Plaintiffs.

30. The Defendants are liable to Plaintiffs for their losses, expenses and damages pursuant to 42 Pa. C.S.A 8351 et. seq., titled Wrongful Use of Civil Proceedings, and Defendants are also liable for the imposition of punitive damages.

31. The underlying litigation was terminated in Plaintiffs' favor, by way of the entry of an order granting a verdict in favor of Plaintiffs.

# COUNT II – VIOLATION OF PA. ACT 6
### (Plaintiffs v. Wells Fargo)

32. On or about September 7, 2008, the Pa. legislature expanded the application of all of Act 6's foreclosure protections to residential loans under $217,873.

33. Accordingly, defendant Wells Fargo was required to send to plaintiffs a letter notice under Act 6 of 1974 (also known as the Loan Interest and Protection Law).

34. Act 6 provides a right to cure, along with an accompanying pre-foreclosure notice, for Pennsylvania homeowners who have fallen behind on their mortgages, notwithstanding a contractual acceleration triggered by a default. 41 P.S. §§ 101, et seq.

35. The pre-foreclosure notice required by Act 6 must clearly and conspicuously state

"... (2) The nature of the default claimed;

(3) The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance, including what sum of money, if any, must be tendered to cure the default ...".

41 P. S. § 403(c)(2) & (3).

36. Both of defendant Wells Fargo's pre-foreclosure notices inaccurately described a default where there was none or a default in an inaccurate amount required to reinstate the loan (Exhs. 2 and 4 hereto).

37. Plaintiffs prevailed in the foreclosure action.

38. The award of statutory attorney's fees and costs to a prevailing defendant is not discretionary; it is mandatory. Section 503 of Act 6 provides that prevailing parties shall receive reasonable attorney's fees and costs:

(a) If a borrower or debtor, including but not limited to a residential mortgage debtor, prevails in an action arising under this act, he shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his behalf in connection with the prosecution of such action, together with a reasonable amount for attorney's fee.

(b) The award of attorney's fees shall be in an amount sufficient to compensate attorneys representing debtors in actions arising under this act as provided in subsection (a) of this section. In determining the amount of the fee, the court may
> (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case.
> (2) The customary charges of the members of the bar for similar services.
> (3) The amount involved in the controversy and the benefits resulting to the client or clients from the services.
> (4) The contingency or the certainty of the compensation.

(c) Any time attorneys' fees are awarded pursuant to any provision of this act, a borrower or debtor shall not be entitled to duplicate recovery of attorneys' fees under this section, sections 407 or 504 or any other provision of this act.

39. Because Plaintiffs, as the Defendant in a mortgage foreclosure action under Act 6, were the prevailing parties, they are entitled to a statutory award of reasonable attorney's fees.

## COUNT III
## VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL)
## 73 P.S. § 201-1 et. seq.

40. Plaintiffs incorporate all prior paragraphs herein by reference.

41. The conduct by defendants described above constituted trade and commerce under the UTPCPL, 73 P.S. § 201 *et seq*.

42. The UTPCPL proscribes, *inter alia*, engaging in any "unfair or deceptive acts and practices" either at, prior to, or subsequent to a consumer transaction.

43. Wells Fargo, through authorized agents and employees including but not limited to co-defendant Phelan, failed to state material facts or otherwise misstated, misrepresented, or omitted the true facts concerning or related to the status of the Loan that tended to deceive and/or did in fact deceive plaintiffs as described herein including but not limited to:

(a) Represented that an accurate accounting of plaintiffs' loan had been made and reviewed thereafter in the course of the foreclosure;

(b) By the filing of the underlying action represented that plaintiffs were in default

under the terms of the Note and Mortgage;

(c) By the filing of the underlying litigation represented that defendants were entitled to foreclose and sell plaintiffs' home at sheriff's sale without first properly accounting for plaintiffs' payments under the loan;

(d) By the filing of the underlying litigation represented that the underlying foreclosure was lawful.

44. It is unreasonable to conclude that a national bank like Wells Fargo does not intend for its customers to rely upon its communications about their account—especially when the communications involve seeking to sell plaintiffs' home as in the underlying action and the defendants collectively fail to acknowledge or review their errors and instead simply ratify their continued wrongful conduct as in this matter.

45. Plaintiffs reasonably relied upon the material acts and actions of defendants as exemplified by their retaining counsel to defend the underlying litigation.

46. But for defendants and their respective agents' and employees' acts and omissions and disregard for its own records reflecting default by plaintiffs when plaintiffs' regular payments were cashed by Wells Fargo for nearly a year after a date of default alleged in the underlying litigation resulting in conflicting and otherwise incorrect accounting of plaintiffs' loan, plaintiffs would not have sustained any damages and losses.

47. The representations and/omissions of Defendants in the prior paragraphs were known or should have been known to those defendants to be false when made, were material in nature, and were made with the intent to deceive or defraud the plaintiffs into selling their home in lieu of accurately and lawfully accounting for plaintiffs' payments under the Note and Mortgage.

8

48. The actions of Defendants described above constitute unfair or deceptive acts and practices under UTPCPL, including, but not limited to the following, *inter alia*:

    (a) Defendants engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding as to a default under the terms of the Note and mortgage entitling defendants to file the foreclosure, 73 P.S. §201-2(xxi);

    (b) Defendants misrepresented the characteristics or benefits of the loan accounting of the loan rendered to plaintiffs as being inaccurate when the loan's servicing and accounting was defective resulting in false allegations of default and false legal claims of right to sell plaintiffs' home under the terms of the Note and Mortgage, 73 P.S. § 201-2 (4)(v);

49. As a result of the aforementioned conduct, the plaintiff suffered the damages outlined above including but not limited to damage to their credit.

## COUNT IV - FAIR DEBT COLLECTION PRACTICES ACT
### (Plaintiffs v. Law Firm)

50. Plaintiffs incorporate the allegations all prior paragraphs by reference.

51. Defendant Law Firm is a debt collector within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a because it regularly collects debts owed to another.

52. Proper accounting by defendants for plaintiff's mortgage loan payments would have determined that plaintiff was not in arrears.

53. In sworn court filings in the underlying litigation as described in detail herein, Defendant has misstated to plaintiffs the amounts due on the debt.

54. Defendants violated §1692e and §1692e(2)(A) and §1692e(5) by making a false representation of the character, amount, or legal status of any debt in its described collection

activities including but not limited to falsely filing a foreclosure complaint and motion pleadings therein when no mortgage arrears were due other than the default artificially created by Wells Fargo's faulty accounting of the loan.

55. Defendants violated §1692f and f(6) by engaging in, respectively, unfair or unconscionable means to collect or attempt to collect a debt and take property from plaintiffs by the aforesaid conduct in the underlying litigation.

### COUNT V – LOSS OF CONSORTIUM

56. Plaintiffs incorporate the allegations all prior paragraphs by reference.

57. As a result of the wrongful acts of Defendants, Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

58. All the aforesaid injuries and damages were caused solely and proximately by the Defendants.

**IV.     Prayer for Relief**

Plaintiffs respectfully request judgment in excess of One Hundred Fifty Thousand Dollars ($150,000.00) in their favor and against Defendants, individually, jointly and/or severally, for the following:

a. Actual damages under the FDCPA for feared loss of their home and damage to their credit and compensatory damages;

b. Statutory damages under the FDPCA;

c. Actual and Treble damages pursuant to the UTPCPL;

d. Costs of litigation and reasonable attorney's fees pursuant to the FDCPA and UTPCPL;

e. Punitive damages for wrongful use of civil proceedings; and

f. Such other and further relief as the Court deems proper.

                    **WEISBERG LAW**

                    _____

                    Matthew B. Weisberg, Esquire
                    Attorney Id:  85570
                    7 South Morton Ave.
                    Morton, PA  19070
                    610-690-0801
                    mweisberg@weisberglawoffice.com

                    **ROBERT P. COCCO, P.C.**

                    _____

                    Robert P. Cocco, Esquire
                    Attorney Id: 61907
                    1500 Walnut Street, Suite 900
                    Philadelphia, PA 19102
                    (215) 351-0200
                    rcocco@rcn.com

Dated:  April 13, 2016                                        Attorneys for Plaintiffs