IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANK ADAMS and CHRISTIE A. ADAMS, *Ind. & as H/W*, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK, N.A., and PHELAN, HALLINAN, DIAMOND & JONES LLP, formerly known as PHELAN, HALLINAN & SCHMIEG, LLP, <br><br> Defendant. | CIVIL ACTION <br> NO. 16-0907 |

## MEMORANDUM

**SCHMEHL, J.  /s/ JLS**                                                                                     **APRIL 13, 2017**

Before this court is the Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Wells Fargo Bank ("Wells Fargo"), and the motion to dismiss filed by Defendant Phelan, Hallinan, Diamond & Jones, LLP ("Phelan") on May 2, 2016. Plaintiffs Frank and Christie A. Adams (hereinafter "Plaintiffs") filed opposition to both motions. Having read the parties' briefing, I will deny the motion of Wells Fargo (Docket No. 12) as to all claims except the wrongful use of civil proceedings claim (Count I), and I will deny the motion of Phelan in its entirety (Docket No. 13).

I.   **STATEMENT OF FACTS**

Defendant Wells Fargo extended a loan to plaintiffs in the amount of $89,000, in which, to secure repayment of the loan, plaintiffs executed and delivered to Wells Fargo a mortgage that granted a lien and security interest in certain real property owned by

plaintiffs at 58 Lillian Lane, Bangor, Northampton County, Pennsylvania 18013. (Def.['s] Mot. Dismiss 2.)

Plaintiffs missed their regular payments for April, June, and July of 2009 and subsequently fell into arrears on the mortgage loan. (FAC, ¶ 6.) At the time of these missed payments, the principal balance on plaintiffs' outstanding loan amount was approximately $66,000. (Id. at ¶ 7.) In or about August 2009, plaintiffs entered a twelve (12) month "Special Forbearance" plan with Wells Fargo. (Id. at ¶ 8.) Plaintiffs completed the special forbearance plan in September 2010 and resumed regular monthly mortgage payments to Wells Fargo through December 2010. (Id. at ¶¶10-11.)

In or about December 2010, Wells Fargo sent plaintiffs an Act 91 foreclosure notice detailing the four (4) regularly monthly payments plaintiffs missed between September and December 2010. (Id. at ¶ 12.) Wells Fargo sent additional Act 91 notices to Plaintiffs in January and February 2011, after having returned the previously made payments by plaintiffs under the special forbearance plan. (Id. at ¶¶ 13-21.) Following the Act 91 notices, Wells Fargo referred plaintiffs to its foreclosure counsel, defendant Phelan. (Def.['s] Mot. Dismiss 3.) At the time of the Act 91 notices, plaintiffs were no longer in arrears. (FAC, ¶ 20.)

In or about October 2011, defendants brought a foreclosure action against plaintiffs in the Northampton Court of Common Pleas. (Id. at ¶ 23.) In December 2015, Wells Fargo voluntarily withdrew its complaint and discontinued the foreclosure action without prejudice. (Def.['s] Mot. Dismiss 4.)

Plaintiffs bring claims against both defendants for alleged violations of Wrongful Use of Civil Proceedings ("Dragonetti Act") (Count I), Pa. Act 6 (Count II), Unfair Trade

Practices and Consumer Protection Law (Count III), Fair Debt Collection Practices Act (Count IV), and Loss of Consortium (Count V).

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) (citing Iqbal, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Connelly v. Lane Construction Corp., 809 F.3d 780, 787 (3d Cir. 2016) (quoting Iqbal, 556 U.S. at 675,

3

679); see also Burtch, 662 F.3d at 221; Malleus v. George, 641 F.3d 560, 563 (3d. Cir. 2011); Santiago v. Warminster Township, 629 F.3d 121, 130 (3d. Cir. 2010).

III. **DISCUSSION**

Defendants Wells Fargo and Phelan both move to dismiss the complaint in its entirety, with each addressing separate claims in their respective motions. For the reasons that follow, I will deny defendants' motions, except as to the Dragonetti claim (Count I) against defendants.

**A. MOTION TO DISMISS OF DEFENDANT WELLS FARGO**

Defendant Wells Fargo sets forth numerous arguments in support of its motion to dismiss Count I (Dragonetti Act), Count II (Pa. Act 6), Count III (UTPCPL), and Count V (Loss of Consortium). As will be discussed below, I will deny Wells Fargo's motion to dismiss except as to Count I, the Dragonetti claim.

**1. Wrongful Use of Civil Proceedings ("Dragonetti Act") (Count I)**

An attorney who knowingly initiates an unsupported action for malicious purposes may be held responsible for wrongful use of civil proceedings, otherwise known as the "Dragonetti Act." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002). The Act was codified by the Pennsylvania legislature to protect against the use of civil proceedings in a grossly negligent manner for purposes other than securing proper discovery, joinder of parties, or adjudication of the claim. *Arader v. Dimitrov*, 2011 WL 4807924, at *4 (E.D. Pa. 2011). Under the Dragonetti Act, the plaintiff must allege five elements:

> (1) The defendant has procured, initiated or continued the civil proceedings against him;
> (2) The proceedings were terminated in his favor;
> (3) The defendant did not have probable cause for his actions;

4

(4) The primary purpose for which the proceedings were brought was not that of securing proper discovery, joiner of parties or adjudication of the claim on which the proceedings were based; and
(5) The plaintiff has suffered damages as set forth in 42 Pa.C.S. § 8353.

*Id.*

However, this Court has held that even where a plaintiff can show that the defendant lacked probable cause for his actions, "the defendant is not liable unless the plaintiff can demonstrate that the underlying action was filed for an *improper purpose*." *Id.* (emphasis added). Therefore, a heavy burden rests on the plaintiff to show the defendant initiated civil proceedings for an improper purpose. *U.S. Express Lines Ltd.*, 281 F.3d at 394.

A review of the Complaint in this matter shows that plaintiffs failed to allege that defendants initiated the foreclosure action for an improper purpose. (FAC, ¶¶ 26-31.) Specifically, plaintiffs allege the defendants commenced the underlying foreclosure action with malice and/or reckless indifference and lacked probable cause. (FAC, ¶¶ 28-29.) Construing plaintiffs' FAC broadly, it appears they allege the defendants improper purpose was "to assert default where it was due to improper accounting by Wells Fargo." Conversely, Wells Fargo argues that it merely initiated the foreclosure action on the mortgage that they believed to be in default. (Def.['s] Reply Brief 4.)

Accepting plaintiffs' allegations as true and drawing all reasonable inferences in their favor, I find that allowing plaintiffs' Dragonetti claim against defendants to proceed is not appropriate. Plaintiffs have not alleged sufficient facts, if true, that would indicate defendants lacked probable cause to initiate litigation against plaintiffs, and that the proceedings were initiated primarily for improper purposes. Plaintiffs' sole allegation relating to an improper purpose – made in its response to Defendants' motion to dismiss

– is that Defendants initiated the foreclosure action "primarily for an improper purpose, to assert default where it was due to improper accounting by Wells Fargo and plaintiffs had otherwise paid in arrears." (Pls.['] Resp. in Opp. 6.) Aside from this conclusory allegation, plaintiffs' have not alleged any facts to support a finding of improper purpose on the part of the defendants. Accordingly, we will dismiss plaintiffs' Dragonetti Act claim (Count I) with prejudice.

### 2. Violation of Pa. Act 6 (Count II)

Act 6, also known as the Loan Interest and Protection Law, provides protection to homeowners and mandates strict notice be given prior to instituting mortgage foreclosure proceedings. 41 P.S. § 403. "Any person affected by a violation of the act shall have the substantive right to bring an action on behalf of himself individually for damages by reason of such conduct or violation[.]" 41 P.S. § 504. Thus, under Act 6, attorneys' fees are statutorily governed by Section 503 of the Act. 41 P.S. § 503(a). Section 503 provides:

> If a borrower or debtor, including but not limited to a residential mortgage debtor, prevails in an action arising under this act, he shall recover the aggregate amount of costs and expenses incurred on his behalf in connection with the prosecution of such action, together with a reasonable amount for attorney's fee.

41 P.S. § 503(a).

Plaintiffs argue they are entitled to reasonable attorneys' fees from the underlying action because Wells Fargo provided improper and inaccurate pre-foreclosure notice causing them to unnecessarily defend the action. (FAC, ¶¶ 36-39.) Additionally, plaintiff argues that it was the prevailing party in the underlying foreclosure action and is entitled to attorneys' fees under the Act. (Id.)

6

Defendants counter that plaintiffs are not entitled to attorneys' fees under Act 6 because a "mortgage foreclosure does not arise under Act 6." (Def.['s] Mot. Dismiss 8.) Defendants rely on *Nguyen*, a 2016 Pennsylvania Superior Court decision precluding attorneys' fees for a residential mortgagor that successfully defended a mortgage foreclosure action. *Generation Mortg. Co. v. Nguyen*, 138 A.3d 646 (Pa. Super. Ct. 2016). Further, defendants argue that plaintiffs are not entitled to attorneys' fees because they were not the prevailing parties in the foreclosure action as it was voluntarily dismissed without prejudice by Defendant Wells Fargo. (Def.['s] Mot. Dismiss 9-10.)

A review of the Complaint in this matter shows that plaintiffs have adequately pled with sufficient specificity Wells Fargo's violation of Act 6 requiring proper notice and entitling Plaintiffs to an award of Attorneys' fees. Furthermore, I find that defendants' argument can be reasserted at a later time as a motion for summary judgment as more evidence is developed. Therefore, the motion is denied at this time as to Count II, violation of Pa. Act 6.

### 3. **Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) (Count III)**

In order to establish a *prima facie* case under the UTPCPL, plaintiff must establish "an ascertainable loss of money or property, real or personal, 'as a result' of the defendant's prohibited conduct under the statute." *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 180 (3d Cir. 2015); *see also Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (2004) (concluding that a plaintiff alleging UTPCPL must show justifiable reliance on defendant's wrongful conduct, and that the plaintiff suffered harm as a result of that reliance). This Court has stated, "because the loss must occur 'as a result' of unlawful conduct under the UTPCPL, 'a private plaintiff pursuing a claim under the

7

statute must prove *justifiable reliance*' on the unlawful conduct, not merely that the wrongful conduct caused plaintiff's injuries." *Seldon v. Home Loan Services, Inc.*, 647 F.Supp.2d 451, 465 (E.D. Pa. 2009) (emphasis added).

Plaintiffs argue defendants engaged in unfair or deceptive acts by failing to state material facts, or otherwise misstated, misrepresented, or omitted true facts relating to the status of the mortgage loan. (FAC, ¶¶ 43.) Specifically, plaintiffs allege defendants inaccurately represented the status of the loan due to an accounting error which lead to the underlying action, and therefore, forced plaintiffs to retain counsel to defend against the foreclosure action. (FAC, ¶¶ 43-45.) Moreover, plaintiffs' claim had it not been for Wells Fargo's material misrepresentations on the status of the loan, plaintiffs would not have suffered any damages or losses. (FAC, ¶¶ 46-47.) Plaintiffs' claim defendants were aware the representations and/or omissions relating to the loan were false when made, and made with the intent to deceive or defraud plaintiffs "into selling their home." (*Id.*)

However, defendants argue there was no justifiable reliance on the part of the plaintiffs as a result of their conduct. (Def.['s] Mot. Dismiss 11-12.) Defendants claim that plaintiffs' hiring of counsel to defend the foreclosure action was not reliance on Wells Fargo's actions and does not amount to an ascertainable loss. (Id.) The Supreme Court of Pennsylvania recently concluded that retaining counsel did not amount to an ascertainable loss. *Grimes v. Enterprise Leasing Co.*, LLC, 105 A.3d 1188, 1193-94 (Pa.2014). However, the court in *Grimes* was concerned with the potential abuse under a private action UTPCPL claim where a Plaintiff could potentially retain counsel in order to satisfy the "ascertainable loss" requirement. *Id.* However, I need not determine at this early stage whether Plaintiff in fact suffered ascertainable loss.

Therefore, accepting plaintiffs' allegations as true and drawing all reasonable inferences in their favor, plaintiffs have alleged sufficient facts that, if true, would indicate plaintiffs justifiably relied on defendants' material misstatements and misrepresentations thereby causing plaintiffs' injuries.  Accordingly, defendants' motion is denied as to Count III, and Plaintiffs' UTPCPL claim will be allowed to proceed.

### 4. Loss of Consortium (Count V)

Under Pennsylvania law, loss of consortium is defined as the "loss of the company, society, cooperation, affection and aid of a spouse in every conjugal relation." *Pahle v. Colebrookdale Tp.*, 227 F.Supp.2d 361, 374-75 (E.D. Pa. 2002).  Loss of consortium does not require that the plaintiff wife or husband sustain physical injury, rather it requires damaged marital expectations as a result of the injury to the opposite spouse.  Therefore, loss of consortium is derivative of the underlying claims asserted by the opposite spouse.  This Court concluded that a plaintiff wife's loss of consortium claim that she was deprived of her husband's companionship, comfort, support, and assistance, was sufficient to state a claim for loss of consortium.  *Fanelle v. LoJack Corp.*, 79 F.Supp.2d 558, 564 (E.D. Pa. 2000).

Here, the plaintiffs allege that defendants' wrongful acts caused them to suffer loss of consortium, society, affection, assistance, and conjugal fellowship, to the detriment of their marriage.  (FAC, ¶¶ 56-58.)  Plaintiffs have pled personal injuries, in addition to pecuniary injury, and have satisfied their loss of consortium claim which is derivative of the remaining claims for violations of Act 6 and the UTPCPL against Wells Fargo.  Meanwhile, Wells Fargo argues that because plaintiffs' loss of consortium claim is derivative of the remaining claims in the FAC, the loss of consortium claim should be

dismissed as a result of the dismissal of all other claims in the FAC. (Def.['s] Mot. Dismiss 12-13.) Since some claims remain, so should the loss of consortium claim, for now. Furthermore, reviewing plaintiffs FAC, I find that plaintiffs have sufficiently pled a loss of consortium claim derivative of all other claims in the FAC. Therefore, Wells Fargo's motion to dismiss the loss of consortium claim (Count V) is denied.

### B. MOTION TO DISMISS OF DEFENDANT PHELAN

Defendant Phelan moves to dismiss the complaint in its entirety and addresses Count IV of the FAC, violation of the Fair Debt Collection Practices Act ("FDCPA"). Defendant Phelan argues that only "material" claims are actionable under the FDCPA. As will be discussed below, I will deny Defendant Phelan's motion to dismiss in its entirety.

#### 1. **Violation of the Fair Debt Collection Practices Act (FDCPA)(Count IV)**

The purpose of the FDCPA is to protect against and eliminate abusive practices by debt collectors. *Brown v. Card Service Center*, 464 F.3d 450, 453 (3d Cir. 2006). The Act provides consumers with a private cause of action against debt collectors who fail to comply with the Act. *Id.* The Third Circuit, reading the Act broadly, finds that it should be analyzed from the perspective of the "least sophisticated debtor." *Id.* However, the Act also prevents "liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.*

A review of the Complaint in this matter shows that plaintiff alleges Phelan, Wells Fargo's debt collecting firm, violated the Act by misstating the amount due on the loan and falsely represented the character, amount, or legal status of the debt. (FAC, ¶¶

53-54.) Plaintiffs' FAC further alleges Phelan improperly filed the foreclosure complaint and motion pleadings when "no mortgage arrears were due other than the default artificially created by Wells Fargo's faulty accounting." (FAC, ¶¶ 54-55.)

Phelan argues that debtors such as the plaintiffs could not have been misled or deceived absent material information. (Def.['s] Mot. Dismiss 3.) Phelan relies on the Ninth Circuit decision in *Donohue*, which held "false but non-material representations are not likely to mislead the least sophisticated debtor[.]" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010). Phelan further relies on Third Circuit jurisprudence in *Jensen*, which concluded that a statement "is only actionable under the FDCPA if it has the potential to affect the decision making process of the least sophisticated debtor[.]" *Jensen v. Pressler & Pressler*, 791 F.3d 413, 415 (3d Cir. 2015). However, the court stated that the "relevant decision-making body" in these cases is the least sophisticated debtor, and therefore a statement is only material if it objectively influences the decision of the debtor. *Id.* at 421.

The Third Circuit found that a debt collection letter is deceptive where "it can reasonably be read to have two or more different meanings, one of which is inaccurate." *Brown*, 464 F.3d at 455. Moreover, the court stated that where a debt collector "has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading." *Id.* Plaintiffs argue that Phelan knew or had reason to know that the foreclosure information was false or misleading.

Therefore, accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, I find that dismissing Count IV, violation of the FDCPA, would

not be appropriate at this stage of the proceedings. Plaintiffs have alleged sufficient facts that, if true, would indicate Phelan made false representations and mislead plaintiffs as unsophisticated debtors. Accordingly, Phelan's motion is denied, and Plaintiffs' FDCPA claim will be allowed to proceed.

## IV. CONCLUSION

It is not the province of this Court to pass judgment on the ultimate strength of plaintiffs' case on a motion to dismiss, and thus the result of a motion to dismiss is not an indication of plaintiffs' likelihood of success on the merits. That said, plaintiffs' First Amended Complaint is largely sufficient to survive Defendant Wells Fargo's and Defendant Phelan's motion to dismiss, and therefore the motion will be denied as to Counts II, III, IV and V. However, Count I, Wrongful Use of Civil Proceedings (Dragonetti Act), will be dismissed with prejudice.